Matter of Luna V. (Natasha V.) (2018 NY Slip Op 05179)





Matter of Luna V. (Natasha V.)


2018 NY Slip Op 05179


Decided on July 11, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 11, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SHERI S. ROMAN
JOSEPH J. MALTESE
LINDA CHRISTOPHER, JJ.


2017-10492
 (Docket Nos. N-4912-17, N-4913-17)

[*1]In the Matter of Luna. (Anonymous). Administration for Children's Services, appellant; Natasha V. (Anonymous), respondent. (Proceeding No. 1)
In the Matter of Julia D. (Anonymous). Administration for Children's Services, appellant; Natasha V. (Anonymous), respondent. (Proceeding No. 2)


Zachary W. Carter, Corporation Counsel, New York, NY (Fay Ng and Jonathan A. Popolow of counsel), for appellant.
Francine Scotto, Staten Island, NY, for respondent.
The Legal Aid Society, New York, NY (Dawne A. Mitchell and Claire V. Merkine of counsel), attorney for the children.



DECISION & ORDER
In two related proceedings pursuant to Family Court Act article 10, the petitioner appeals from an order of the Family Court, Richmond County (Peter F. DeLizzo, J.), dated October 11, 2017. The order, after a hearing, granted the mother's application pursuant to Family Court Act § 1028 for the return of the subject children to her custody. By decision and order on motion dated October 27, 2017, this Court stayed enforcement of the order dated October 11, 2017, pending hearing and determination of the appeal.
ORDERED that the order dated October 11, 2017, is reversed, on the law and the facts, without costs or disbursements, and the mother's application pursuant to Family Court Act § 1028 for the return of the subject children to her custody is denied.
The mother is the biological parent of the subject children. In September 2017, the petitioner commenced these proceedings alleging, inter alia, that the children's physical, mental, or emotional condition had been impaired or was in imminent danger of becoming impaired as a result of the failure by the mother to exercise a minimum degree of care based on her misuse of drugs on September 20, 2017. At the time of the filing of the petitions, the children were seven months old and eight years old, respectively. The children were temporarily removed from the mother's care.
The mother made an application for the return of the children pursuant to Family Court Act § 1028(a). In the order appealed from, the Family Court, after a hearing, granted the [*2]mother's application. The court determined that the petitioner failed to prove that the "isolated instance that occurred on September 20, 2017, whereby the mother's use of newly prescribed medication, resulting in a temporary drowsiness, pose[d] imminent risk to the children." The court ordered the children to be returned to the mother's care "with a usual terms Temporary Order of Protection" and daily home visits by the petitioner. The petitioner appeals. By decision and order on motion dated October 27, 2017, this Court granted the petitioner's motion to stay enforcement of the order pending hearing and determination of the appeal.
An application pursuant to Family Court Act § 1028(a) for the return of a child who has been temporarily removed "shall" be granted unless the court finds that "the return presents an imminent risk to the child's life or health" (Family Ct Act § 1028[a]; see Matter of Esscence R. [Ebony B.R.Y.], 158 AD3d 806; Matter of Julissia B. [Navasia J.], 128 AD3d 690, 691). "In making its determination, the court must weigh, in the factual setting before it, whether the imminent risk to the child can be mitigated by reasonable efforts to avoid removal'" (Matter of Esscence R. [Ebony B.R.], 158 AD3d at 806, quoting Nicholson v Scoppetta, 3 NY3d 357, 378; see Matter of Jorge T. [Christine S.], 157 AD3d 800, 800-801). "In reviewing a Family Court's determination of an application pursuant to Family Court Act § 1028(a) for the return of a child who has been temporarily removed, this Court must determine whether a sound and substantial basis in the record supports the Family Court's determination" (Matter of Julissia B. [Navasia J.], 128 AD3d at 691; see Matter of Esscence R. [Ebony B.R.], 158 AD3d at 807; Matter of Alex A.E. [Adel E.], 103 AD3d 721, 722).
Here, the record does not provide a sound and substantial basis for the Family Court's determinations that the mother's condition was mere "temporary drowsiness" resulting from her use of newly prescribed medication and that the petitioner failed to prove that the return of the children presents an imminent risk to their life or health. The record reflects that, on September 20, 2017, the mother was the only adult at home with the children, her eight-year-old daughter (hereinafter the child) and seven-month-old infant, when the mother locked herself in the bathroom for an extended period of time. The child knocked repeatedly on the bathroom door, but the mother did not answer. When the mother finally emerged from the bathroom, her speech was slurred, she was unable to hold food in her hands, and she could not maintain her balance. Frightened by the mother's behavior, the child called her grandfather, who arrived to find the mother lying face down on the child's bed. The grandfather eventually was able to wake the mother by calling her name while the child shook her. He then called 911.
A responding Emergency Medical Technician (hereinafter EMT) testified at the hearing held pursuant to Family Court Act § 1028 that he found the mother "lying in her own saliva." The EMT testified that the grandfather reported that the mother had a history of substance abuse, including "crack cocaine, possibly heroin, [and] turpentine." The mother, who had bloodshot eyes and constricted pupils, told the EMT that she had only taken Motrin. However, the EMT assessed that the mother "had taken some sort of substance," and the mother was transported to the emergency room.
According to the emergency room attending physician who examined the mother, the mother arrived at the emergency room at approximately 8:45 p.m., and was seen within minutes of her arrival because "[s]he was deemed sicker than the average person." The attending physician presumptively diagnosed her with opiate ingestion. The mother told the attending physician that she had been prescribed Percocet, that her prescription was increased that day to 10 milligrams, and that she had taken two 10 milligram tablets. The attending physician explained in his testimony that the mother had "pinpoint pupils," which occurs when a person has taken a large amount of opiates. A resident physician in the emergency room who also treated the mother diagnosed her with opiate-induced drug intoxication and narcotic abuse. He testified that the mother was not discharged until between 6:00 a.m. and 7:00 a.m. the following morning because, prior to that time, she was "just not sober enough to be safely able to get home."
During the petitioner's ensuing investigation of the incident, the child reported to the petitioner's caseworker that, on the date of the incident, she had noticed a full medicine bottle in the [*3]kitchen when she got home from school, and that the same bottle was only half-full at the time of the EMTs' arrival. Additionally, the child said that, prior to her interview with the petitioner's caseworker, the mother had told her not to say anything to the petitioner about what happened on the evening in question and to lie about the incident. There was also testimony presented at the hearing concerning the mother's ongoing attempts to increase the dosages of her prescription medications, including Valium and Percocet. The mother's psychiatrist, who had doubled the mother's prescription for Valium, testified that she was not aware the mother was also taking Percocet. The mother's psychiatrist further testified that she did not check the New York State Prescription Management Registry because she trusted the mother, and she would not have prescribed Valium if she had known the mother was taking Percocet.
The mother did not testify or call any witnesses at the hearing.
The evidence presented at the hearing established that returning the subject children to the mother would place their life or health in imminent danger, even with the safeguards imposed by the Family Court (see Matter of Julissia B. [Navasia J.], 128 AD3d at 691; Matter of Alexi R.C. [Monica D.], 109 AD3d 819, 821; see also Matter of Grace F. [Nicole F.], 144 AD3d 680, 680-681; cf. Matter of Esscence R. [Ebony B.R.], 158 AD3d at 807). The safeguard imposed by the court of requiring daily home visits by the petitioner was indicative of a high degree of concern for the mother's condition and ability to care for the children, and, under the circumstances of this case, was insufficient to mitigate the imminent risk to the children.
Accordingly, the Family Court should have denied the mother's application pursuant to Family Court Act § 1028 for the return of the children to her custody.
DILLON, J.P., ROMAN, MALTESE and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court